# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:17-CV-635-CHL

TINA M. BASHAM,

                                                                                                                     **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,                            **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) of Plaintiff, Tina M. Basham ("Basham"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). Basham filed her Fact and Law Summary on March 26, 2018, and the Commissioner filed a Fact and Law Summary on June 25, 2018. (DNs 13, 18.) The Parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12.) Therefore, this matter is ripe for review.

For the reasons stated herein, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

Basham filed an application for SSI on February 28, 2014. (DN 10-5, at PageID # 190-93.) Administrative Law Judge ("ALJ") Marci P. Eaton conducted a hearing on Basham's application on August 16, 2016. (DN 10-2, at PageID # 68-94.) In a decision dated November 7, 2016, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether Basham was disabled. (*Id.* at 53-63.) In doing so, the ALJ made these findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2013. (*Id.* at 58.)

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2010, through her date last insured of March 31, 2013. (*Id.*)

3. Through the date last insured, the claimant had the following severe impairments: history of myocardial infarction with residual ischemic heart disease; osteoarthrosis in bilateral lower extremities; diabetes mellitus; psoriasis and chronic obstructive pulmonary disease (COPD). (*Id.*)

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps or stairs. She can occasionally climb ladders, ropes or scaffolds. She can frequently stoop. She can occasionally kneel, crouch, or crawl. She should avoid concentrated exposure to extreme cold or heat. (*Id.* at 59.)

6. Through the date last insured, the claimant was capable of performing past relevant work as a community health worker. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (*Id.* at 62.)

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2010, the alleged onset date, through March 31, 2013, the date last insured. (*Id.*)

Basham requested review by the Appeals Council, which denied her request for review on August 19, 2017. (*Id.* at PageID # 47-49.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. § 405(h) (2017) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Basham is presumed to have received that decision five days later on August 24, 2017. 20 C.F.R. § 422.210(c). Plaintiff filed this action on October 17, 2017. (DN 1.)

## II.     DISCUSSION

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401 – 434, 1381-1383f (2017).  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2018).

### A.     Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five- Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2018). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 416.909 (2018).

C. **Plaintiff's Contentions**

Basham alleged the ALJ erred in four ways. First, Basham argued the ALJ erred in not finding she was disabled under Listing 3.02. (DN 13-1 at PageID # 885). Second, Basham argued that the ALJ's determination that the combination of her impairments did not render her disabled was not supported by substantial evidence. (*Id.* at 889.) Third, Basham argued there was not substantial evidence to support the ALJ's RFC finding. (*Id.* at 885.) Fourth, Basham argued the ALJ should have issued a GRID ruling in this case. (*Id.* at 885-86.) The Court will address each contention below.

1. **Listing 3.02**

Basham argued that the ALJ erred at Step Three of the five-part analysis by not evaluating Listing 3.02. (*Id.* at 886.) At Step Three of the five-step evaluation process, an ALJ considers whether the claimant has an impairment that meets the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920. "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). In this case the ALJ's opinion addressed whether Basham's impairments met Listings 1.00 and 4.0 (musculoskeletal and cardiovascular impairments) but did not explicitly evaluate whether her impairments met listing 3.02 (chronic respiratory disorder). (DN 10-2, at PageID # 58-59.)

An ALJ is not required to address every listing in his or her findings. *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. App'x 639, 641 (6th Cir. 2013). If "the record 'raises a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432 (6th Cir. 2014). A "substantial question"

5

requires the claimant to "point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 Fed App'x at 432. Without such evidence, the ALJ "does not commit reversible error by failing to evaluate a listing at Step Three." *Id*. at 433. The claimant bears the burden of proving her impairment satisfies all the specified criteria in a given listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Here, the Court finds that Basham has not met her burden and that no substantial question existed requiring the ALJ to evaluate Listing 3.02.

Basham contended she met the requirements of Listing 3.02, which provides that an individual is considered disabled as a result of "chronic respiratory disorders due to any cause except CF with A, B, C, or D." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02. Specifically, Basham proffered test results suggesting she met the Subsection (A) or (B) criteria, which required her to show either she had an $FEV_1$ or FVC less than or equal to specified values based on a claimant's "age, gender, and height without shoes." [2] *Id.* at § 3.02(A)-(B). However, the explanatory notes preceding Listing 3.02 explain the "requirements for an acceptable test and report" to demonstrate a valid $FEV_1$ and FEV score for purposes of the Listing in relevant part as follows:

> Spirometry, which measures how well you move air into and out of your lungs, involves at least three forced expiratory maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume of air you exhale in the first second of the forced expiratory maneuver is the $FEV_1$. The total volume of air that you exhale during the entire forced expiratory maneuver is the FVC. We use your highest $FEV_1$ value to evaluate your respiratory disorder under 3.02A, 3.03A, and 3.04A, and your highest FVC value to evaluate your respiratory disorder under 3.02B, regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers.

---

[2] $FEV_1$ is defined as "forced expiratory volume in the first second of a forced expiratory maneuver." *Id.* at § 3.00(C)(10). FVC is defined as "forced vital capacity." *Id.* at § 3.00(C)(11).

6

*Id.* at § 3.00(E)(1). The explanatory notes also set other requirements for the spirometry test, including that the claimant be "medically stable," and set certain requirements for the content of a report of test results. *Id* at § 3.00(E)(2)-(3). Here, while Basham pointed to $FEV_1$ and FVC levels in the record that she claimed comport with Listing § 3.02(A) and (B)'s requirements for a person of her age, gender, and height without shoes, she did not offer any corresponding evidence that these tests comported with the specifications set forth in the Listing, nor is it clear the specifications are met from review of the records themselves. (DN 10-7, at PageID # 468, 525.) As Basham has failed to point to evidence in the record of a spirometry test satisfying the Listing's requirement, she has not demonstrated she met Listing 3.02. *See, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 Fed. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes who the impairment has such equivalency."). Without such evidence in the record, there was not a substantial question requiring the ALJ to consider Listing 3.02.

Further, the test results that Basham argued created the substantial question are from 2014 and 2016, both of which she conceded are after her March 31, 2013 Date Last Insured ("DLI"). (DN 13-1, PageID # 887.) Because the tests were performed after the expiration of Basham's insured status, they are only minimally probative as to her condition during the relevant period. *Brown v. Soc. Sec. Admin.*, 221 F.3d 1333, at *1 (6th Cir. 2000) (table disposition, unpublished). Basham has not identified other evidence during the relevant period to be viewed alongside the minimally probative respiratory tests, stating that the same is due to lack of finances. (DN 13-1, at PageID # 889.) Without such evidence, Basham has failed to demonstrate the ALJ erred in not evaluating Listing 3.02.

Basham also argued that the medical evidence was such that the ALJ should have called on a medical advisor to testify regarding whether the $FEV_1$ and FVC levels would have been similar prior to her DLI. (*Id* at 887-88.) However, Basham presented no authority requiring the ALJ to call a medical advisor to testify in her case. SSR 83-20, which Basham cited in her brief, only applies in situations where the ALJ has found a disability and is addressing when the onset of the disability was. SSR 83-20, 1983 WL 31249 (1983). As noted above, Basham has not pointed to evidence in the record substantiating that the 2014 and 2016 respiratory tests met the requirements of the explanatory notes to Listing 3.02. Therefore, there was no disability to create a need for a medical advisor to determine an onset date regarding Listing 3.02.

As Basham has failed to point to evidence in the record demonstrating she met the requirements of Listing 3.02, the Court finds no error in the ALJ's listing determination.

2. **Combined Effects of Impairments**

Basham argued there was not substantial evidence to support the ALJ's finding that the combined effects of her conditions did not make her disabled. (DN 13-1, at PageID # 889.) Basham indicated that there was evidence in the record that the combined effects of her pulmonary condition, heart condition, and depression, as well as the side effects of her diabetes medication "would have precluded her from working any of her past relevant work or any other jobs in the local or national economy." (*Id.* at 890-91.)

An ALJ is required to consider the combined effect of a claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. § 416.923 (2016). Discussing multiple impairments individually does not mean the ALJ failed to consider the combined effect of those impairments where the ALJ specifically referred to a "combination of impairments" in finding that the claimant did not meet the Listings. *Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589,

8

592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988); *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

At Step Two, the ALJ found that Basham had multiple severe impairments, including history of myocardial infarction with residual ischemic heart disease, osteoarthrosis in bilateral lower extremities, diabetes mellitus, psoriasis, and chronic obstructive pulmonary disease ("COPD"). (DN 10-2, at PageID # 58.) At Step Three, the ALJ concluded that Basham "did not have an impairment or *combination of impairments* that met or medically equaled the severity of one of the listed impairments in" the Listings. (*Id.* (emphasis added)) Further, the ALJ noted that "[d]espite her combined impairments, the medical evidence fail[ed] to document listing-level severity . . . ." (*Id.*). Then, in determining Basham's RFC, the ALJ went on to discuss specific medical evidence in the record, including Basham's mental health treatment records, cardiac office visits, physical examinations, and treatment notes. (*Id.* at 60-62.) Regarding her heart condition, the ALJ cited to records from her cardiologist that indicated her coronary artery disease was stable and office visits to the same in September 2011, July 2012, and October 2013 that "revealed her symptoms continued to be stable" and that she was "symptomatically doing well." (*Id.* at 60.) The ALJ reviewed Basham's mental health treatment records and cited that "progress notes reveal[ed] claimant no longer required mental treatment" and "was no longer seeking treatment." (*Id.*) The ALJ noted that a November 2012 respiratory exam "revealed symmetrical chest expansion bilaterally with normal respiratory rate, with no rales, rhonchi, wheezing and normal breath sounds." (*Id.* at 61.) The ALJ ultimately concluded that "documentary evidence fail[ed] to support the claimant's allegations of disabling breath problems, diabetes, cardiac problems, anxiety and depression." (*Id.*) As the ALJ discussed Basham's conditions individually and also, at the third

step, specifically referred to a "combination of impairments" in finding Basham did not meet the listings, the undersigned concludes Basham's argument is without merit.

Basham also criticized the ALJ's decision for failure to consider the side effects of her diabetes medication. (DN 13-1, at PageID # 891.) She argued that her diabetes medication causes her to have severe diarrhea, citing her hearing testimony and a record where she reported the side effect to her doctor on September 9, 2013. (*Id.*) However, the record to which she cites does not substantiate her hearing testimony that her diarrhea was severe, as it merely notes that Basham "state[d] when takes metformin has diarrhea." (DN 10-7, at PageID # 334.) While the ALJ is required to consider medication side effects in making his RFC determination, *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. App'x 515, 532 (6th Cir. 2014), here the symptoms at issue were reported to Basham's physician after her DLI. In light of the other evidence related to Basham's RFC relied on by the ALJ in support of his decision, the undersigned finds that the ALJ's decision not include limitations related to the side effects of Basham's medications was supported by substantial evidence.

### 3. RFC Finding

Basham next argued there was not substantial evidence to support the ALJ's finding that she maintained the RFC to perform light work. (DN 13-1, PageID # 885.) Specifically, Basham argued that based on the objective evidence at the hearing, she should have been limited to less than sedentary work. (*Id.*, PageID # 892.) Basham also asserted "that there [wa]s absolutely no indication anywhere in the record that Ms. Basham retained the ability to perform light work . . . ." (*Id.*)

The ALJ found that Basham had the RFC to perform light work as defined in 20 CFR 404.1567(b) with several limitations. (DN 10-2, PageID # 59.) Basham was found to have postural

and environmental limitations including "she can occasionally climb ladders, ropes or scaffolds. She can frequently stoop. She can occasionally kneel, crouch or crawl. She should avoid concentrated exposure to extreme cold or heat." (*Id.*) In support, as discussed above, the ALJ noted that cardiology records from September 2011, July 2012, and October 2013 revealed Basham's symptoms were stable and she was "symptomatically doing well." (DN 10-2, at PageID # 60.) She also noted that progress notes from Basham's mental health treatment records indicated that Basham "no longer required mental treatment" and "was no longer seeking treatment." (*Id.*) She found the record failed to support Basham's "allegations of disabling breathing problems, diabetes, cardiac problems, anxiety and depression." (*Id.* at 61.) She stated that "the record [wa]s void of actual diagnostic studies that reveal[ed] significant physical or mental limitations before March 31, 2013, the claimant's date last insured." (*Id.*) Further, the ALJ cited to the opinion of state agency physician, P. Saranga, M.D., who found the claimant was limited to a range of medium work. (*Id.* at 62; *see also* DN 10-3, at PageID # 114-16.) This evidence alone tends to refute Basham's contention that there was no evidence in the record of her ability to perform light work. However, citing to Basham's ischemic heart disease, osteoarthrosis, and COPD, the ALJ even reduced Basham from medium to light work. (DN 10-2, at PageID # 62.)

While Basham argues that her own testimony at the hearing supports that she cannot be on her feet (DN 13-1, at PageID # 893), the ALJ recounted Basham's hearing testimony before stating that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (DN 10-2, at PageID # 61.) Basham does not challenge this finding on any basis other than that the RFC finding itself is not supported by substantial evidence.

11

In light of the evidence cited to by the ALJ, the undersigned finds the ALJ supported her RFC finding with substantial evidence. When the ALJ relies on substantial evidence to support her conclusions, the role of the court is not to second-guess those conclusions. See *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir.2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support an opposite conclusion"). Accordingly, the undersigned finds no reversible error regarding the ALJ's RFC determination.

### 4. GRID Ruling

Basham finally argued the ALJ should have applied the Medical Vocational Guidelines (the "GRIDs") and found her disabled. (DN 13-1, at PageID # 894.) Basham claimed that if the ALJ had limited her RFC to sedentary work, as opposed to light work, the ALJ would have found her disabled under the GRIDs. (*Id.* at 893-94.) As the undersigned already found the ALJ's restriction of Basham to light work in her RFC determination was supported by substantial evidence, Basham's argument regarding a GRID analysis as to sedentary work fails on its face.

## III. CONCLUSION AND ORDER

For these reasons, and the Court being otherwise sufficiently advised, IT IS HEREBY **ORDERED** as follows:

(1) The final the decision of the Commissioner of Social Security is **AFFIRMED**, and this action is **DISMISSED** with prejudice.

(2) A final judgment will be entered separately.